UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232 (DSD/KMM)

UNITED STATES OF AMERICA,

Plaintiff,

v.

RUSSELL JASON RAHM, *et al.*,

Defendants.

**GOVERNMENT'S MOTION TO DESIGNATE CASE AS COMPLEX UNDER THE SPEEDY TRIAL ACT**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Joseph H. Thompson, Harry M. Jacobs, and Melinda A. Williams, Assistant United States Attorneys, respectfully moves the Court for an order designating the above-captioned matter as a complex case for purposes of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(7)(B)(ii) and (iv). The grounds for this motion are as follows:

1.      The grand jury returned an indictment on October 20, 2020, charging 43 defendants with conspiracy to commit mail fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1349, and 2326. The indictment describes a scheme dating back at least twenty years to defraud more than 150,000 elderly and otherwise vulnerable victims.

2.      The instant case is related to four other cases in this district which, in total, charge 62 defendants with crimes related to the scheme. *United States v. Wayne Robert Dahl, Jr.*, 18 CR 305 (JRT/BRT) (1 defendant); *United States v. Michael Oelrich*, 20 CR 128 (JRT) (1 defendant); *United States v. Daniel Mathias, et al.*, 20

CR 231 (JRT/BRT) (8 defendants), and *United States v. Cody Wayne Timmerman, et al.*, 20 CR 233 (ADM/KMM) (9 defendants).

3.      The indictment charges the defendants with devising and carrying out a telemarketing scheme to defraud victim-consumers located across the United States, many of whom were elderly and vulnerable. They accomplished their fraud scheme by calling victim-consumers who had one or more existing magazine subscriptions and offering to "renew" the existing magazine subscriptions, often at a reduced cost. In reality, the defendants were not calling to renew or reduce the price of the existing subscriptions. Instead, the defendants tricked their victims into signing up for entirely new magazine subscriptions, which they did not want and often could not afford.

4.      The defendants and their companies bought and sold lists of victim-consumers who had active and ongoing magazine subscriptions for use in carrying out the scheme. As a result, many victim-consumers were victimized by multiple magazine companies. Some were fraudulently billed by as many as ten companies at a time and received more than $1,000 in monthly magazine subscription charges. In all, the defendants stole more than $300 million from more than 150,000 victims using this scheme.

5.      The defendants in this case ran call centers across the United States, including in Minnesota, Florida, Missouri, Arizona, Illinois, and Colorado. The defendants are located both in Minnesota as well as in more than a dozen states across the country. The defendants took steps to cover up their fraud, including by operating the call centers under an array of shell companies to disguise the scope of

2

their fraud scheme. The defendants hid the identity and location of their companies by registering the shell companies with multiple out-of-state secretary of state offices and using virtual offices in different states as the companies' mailing addresses. They did this to confuse victim-consumers and make it difficult for them to identify the company that was fraudulently billing them.

6.      Discovery in this case will be extensive. During the course of this investigation, the grand jury issued more than 600 subpoenas. The responses to these subpoenas include financial statements and other records for hundreds of bank accounts and credit card merchant accounts. The government interviewed hundreds of witnesses and individuals involved in the fraud scheme, and will be producing hundreds of reports documenting those interviews. The government obtained and executed physical search warrants for 32 businesses located across 14 states and 16 judicial districts. During these searches, the government seized approximately 600 electronic devices, including computers, cell phones, and servers. The government also obtained warrants to search more than 60 email accounts, through which the government obtained more than 1.2 million emails relevant to the investigation. In all, the government will be producing millions of pages of discovery.

7.      The discovery will also include more than 1,000 recordings. These include more than 600 phone calls from telemarketers to undercover federal agents, approximately 100 consensually recorded calls through confidential informants or cooperating defendants, and hundreds of calls recorded through the consensual monitoring of an elderly victim's home phone number pursuant to 18 U.S.C. § 2511.

8.     The Speedy Trial Act requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the running of the time is stopped for reasons set out in the statute. *See* 18 U.S.C. § 3161; *United States v. Lucas*, 499 F.3d 769, 782 (8th Cir. 2007). Periods of delay caused by pretrial motions are excluded from the calculation of this 70-day time frame, as are continuances granted by the court in order to best serve "the ends of justice." *United States v. Shepard*, 462 F.3d 847, 863 (8th Cir. 2006).

9.     Under Section 3161(h)(7)(B)(ii), the court may continue proceedings beyond the time limits established by the Speedy Trial Act if the court finds "the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself." Even if a case is not so unusual or complex as to fall within clause (ii), section 3161(h)(7)(B)(iv) permits a continuance where the failure to do so "would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

10.     Local Rule 12.1 sets forth time periods for discovery disclosures, filing of pretrial motions, and motions hearings. Under the local rules, to the extent practicable, the government shall produce discovery within 7 days of arraignment, defendants shall produce reciprocal discovery within 14 days of arraignment, and the parties shall file pretrial motions within 21 days of arraignment. L.R. 12.1(a)-(c).

11.     Given the complexity of this case and the volume of discovery the government will produce, an enlargement of these time periods serves the interests of the parties and the ends of justice. The government expects that it will produce discovery following the issuance of a protective order in this case, and after defense counsel has obtained and provided hard drives to the government. For sixty defendants, this process will almost certainly take more than 7 days. Even if the defense received the discovery within a week, it would also be unreasonable to expect the defense to meaningfully review this voluminous discovery—and for the parties to fulfill their obligation to meet-and-confer prior to the filing of pretrial motions—within the time frames set out in the local rules.

12.     This case is unusual and complex in that the indicted conduct involves a nationwide network of telemarketing companies that have carried out a massive and long-running fraud scheme involving hundreds of thousands of victims and $300 million in losses. The indictments in this, and several related cases, are the result of a two-year long investigation that gathered millions of pages of documents, hundreds of computers and other electronic devices, and more than 600 audio recordings. This matter will require extensive document and evidence review and preparation, such that it is unreasonable to expect adequate preparation under the standard scheduling order, and for the trial, within the time limits of the Speedy Trial Act or the time limits as typically set by this Court. Therefore, an exclusion of time under 18 U.S.C. § 3161(h)(7)(B)(ii) and (iv) is warranted.

13.    At a later date, after the defendants make their appearances in this District, the government intends to submit a proposed case management schedule for the completion of pretrial and trial proceedings.

WHEREFORE, the government respectfully requests that the Court designate this case complex under 18 U.S.C. §§ 3161(h)(7)(B)(ii) and (iv), and exclude the time period from October 27, 2020 to October 27, 2021 from any computation of time under the Speedy Trial Act. The government further requests that, following the appearances of the defendants in this District, the Court issue a case management order setting out the dates for disclosure of Rule 16 materials, the filing of motions and responses, a motions hearing date, and a trial date, enlarging the time periods typically contemplated in the local rules in this complex case.

Dated: October 27, 2020                          Respectfully Submitted,

                                                 ERICA H. MacDONALD
                                                 United States Attorney

                                                 /s/    *Joseph H. Thompson*
                                      BY:    JOSEPH H. THOMPSON
                                             HARRY M. JACOBS
                                             MELINDA A. WILLIAMS
                                             Assistant United States Attorneys
                                             United States Attorney's Office
                                             300 South Fourth Street, Suite 600
                                             Minneapolis, MN  55415