1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     United States of America,      )   File No. 20CR232(13)
4                                   )        (JRT/KMM)
              Plaintiff,            )
5                                   )
     vs.                            )   St. Paul, Minnesota
6                                   )   November 13, 2020
     Bryant Jarode Critten,         )   10:00 A.M.
7                                   )
              Defendant.            )
8    ------------------------------------------------------------

9
            BEFORE THE HONORABLE JUDGE PAUL A. MAGNUSON
10                 UNITED STATES DISTRICT COURT
              **(CHANGE OF PLEA HEARING VIA VIDEO CONFERENCE)**
11
     APPEARANCES
12    For the Plaintiff:        United States Attorney's Office
                                HARRY JACOBS, AUSA
13                              300 South Fourth Street
                                Suite 600
14                              Minneapolis, MN 55415

15    For the Defendant:        Caplan & Tamburnino
                                JILL A. BRISBOIS, ESQ.
16                              10 South Fifth Street
                                Suite 525
17                              Minneapolis, MN 55402

18    Court Reporter:           KRISTINE MOUSSEAU, CRR-RPR
                                300 South Fourth Street
19                              Box 1005
                                Minneapolis, MN 55415

20

21

22
         Proceedings recorded by mechanical stenography;
23   transcript produced by computer.

24

25

1          **10:00 A.M.**

2

3     **(In open court via video conference.)**

4          THE COURT:  Good morning, everyone.  We have the

5     matter of the United States versus Critten for a plea, and

6     may we have the defendant sworn, please.  I'll do it.

7          Mr. Critten, if you would raise your right hand,

8     please.

9          THE DEFENDANT:  Yes, sir.

10          **(Defendant sworn.)**

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Okay.  Thank you.  You have to

13     understand, Mr. Critten, that because you are under oath,

14     testimony given today must be truthful, and lack of truth

15     could result in serious charges of perjury or other things.

16          Now, at this point because we're dealing with

17     what we anticipate to be a plea, I'm going to ask

18     Mr. Jacobs to summarize the plea agreement for the record.

19     You don't need to go into the factual basis at this point

20     because we'll go into that later, but if you would

21     summarize the plea agreement for the record and submit it

22     to the Court, please.

23          MR. JACOBS:  Thank you, Your Honor.  I believe we

24     tendered a signed copy of the plea agreement to the Court

25     yesterday virtually, but I will go through the plea

1    agreement now.

2            The defendant agrees to plead guilty to Count 1

3    of the indictment which charges him with conspiracy to

4    commit mail fraud in violation of 18 U.S.C. 1341, 1349 and

5    2326.  The defendant fully understands the nature and the

6    elements of these charges.  I will come back to the factual

7    basis, Your Honor.

8            The plea agreement contains a waiver of pretrial

9    motions.  The defendant understands and agrees that he has

10   the right to file pretrial motions, and he gives up those

11   rights pursuant to this plea agreement.  The defendant

12   understands that he is waiving his constitutional trial

13   rights.

14           Defendant understands he has the right to go to

15   trial and he would be presumed innocent at trial.  He would

16   have the right to a trial by jury and the right to

17   assistance of counsel.  He gives up these rights pursuant

18   to this plea agreement, and he does so knowingly and

19   voluntarily.

20           Paragraph 5 of the plea agreement deals with

21   additional consequences.  He understands that as a result

22   of the conviction, he could experience additional

23   consequences, including the loss of the right to carry a

24   firearm, the right to vote or the right to hold public

25   office.

1          Paragraph 6 of the plea agreement deals with the

2     statutory penalties pursuant to the charges of conspiracy

3     to commit mail fraud in violation of 18 U.S.C. 1341, 1349

4     and 2326.

5          There is a statutory maximum of 30 years in

6     prison, a supervised release term of not more than five

7     years, a maximum fine of $250,000 or twice the gross gain

8     or loss caused by this offense, restitution as agreed to by

9     the parties, which I will discuss momentarily, and a

10    mandatory special assessment of $100.

11         Paragraph 7 of the plea agreement deals with

12    guideline calculations.  The base offense level in this

13    case is 7 pursuant to Guidelines Section 2B1.1A1.  There

14    are several specific offense characteristics here.

15         The parties pursuant to the plea agreement agree

16    that the base offense level will be increased by 18 levels

17    because the loss amount in this case is greater than 3.5

18    million but less than 3.9 million.  The parties also agree

19    that the base offense level should be increased by two

20    levels because the offense involved ten or more victims and

21    was committed through mass marketing.

22         The parties agree that no additional specific

23    offense characteristics apply.  With respect to Chapter 3

24    adjustments, the parties agree that the offense level

25    should be increased by four levels because Mr. Critten knew

1    or should have known that the offense involved a large

2    number of vulnerable victims, and the parties agree that

3    the offense level should be increased by two levels because

4    the defendant was a manager or supervisor of the criminal

5    activity here.

6            The parties also agree that the government will

7    recommend that the defendant receive a two-level reduction

8    for acceptance of responsibility pursuant -- assuming that

9    he continues to abide by the conditions of the plea

10   agreement and his conditions of release.

11           The government also agrees that assuming he

12   continues to do those things, it will move for an

13   additional one level reduction at the time of sentencing.

14           Pursuant to the plea agreement, the parties

15   believe based on information known at this time that

16   Mr. Critten falls into a Criminal History Category of I.

17   That is just a stipulation -- that is just based on the

18   agreement.

19           That is not a stipulation but based on

20   information known to the parties at this time, and based on

21   the information that I have just discussed contained in the

22   plea agreement, the guideline range here based on the

23   adjusted offense level of 30 and a Criminal History

24   Category of I, the sentencing guideline range is 97 to 121

25   months imprisonment.

1        And there is a corresponding fine range based on

2   the adjusted offense level of $30,000 to $300,000.

3   Paragraph 8 -- paragraph 8 of the plea agreement deals with

4   revocation of supervised release.  The defendant

5   understands that if he were to violate any condition of his

6   supervised release, he could be sentenced to an additional

7   term of imprisonment.

8        Paragraph 9 of the plea agreement discusses

9   discretion of the Court.  The defendant understands that

10  the terms of the plea agreement are binding on himself and

11  the government only, that the plea agreement does not bind

12  the Court and that the sentencing guidelines are advisory

13  here and the Court will make its own determination as to

14  the applicable guideline ranges, as well as the sentencing

15  term.

16       Paragraph 10 deals with agreements for sentencing

17  recommendations.  The defendant understands that both

18  parties are free to recommend whatever sentence they deem

19  appropriate.  Either party can make a motion for departure

20  as to the applicable guideline range.

21       Paragraph 11 deals with the special assessment.

22  The defendant understands that he will be required to pay a

23  special assessment in the amount of $100, and he agrees to

24  do so before the time of sentencing.

25       Paragraph 12 of the plea agreement deals with

1    restitution.  The defendant understands and agrees that the

2    mandatory Victim Restitution Act applies in this case, and

3    he agrees to pay $50,000 in restitution to all identified

4    victims in this and other related cases.

5            Paragraph 13 deals with disclosure of assets.

6    The defendant agrees to completely disclose to the U. S.

7    Attorney's Office the existence of any assets in advance of

8    his sentencing hearing.

9            Paragraph 14 of the plea agreement deals with

10   forfeiture.  The defendant agrees to forfeit to the United

11   States any property which was derived or traceable to the

12   mail fraud conspiracy scheme charged in Count 1 of this

13   indictment.

14           Paragraph 15 of the plea agreement is a venue

15   waiver, Your Honor.  In exchange for the consideration of

16   this plea agreement, the defendant waives all rights to

17   challenge venue in the state and District of Minnesota and

18   does so knowingly and voluntarily.

19           Paragraph 16 is a waiver of appeal and collateral

20   attack.  The defendant pursuant to the plea agreement

21   waives the right to appeal any non-jurisdictional issues

22   relating to this case, and this appeal includes the

23   defendant's waiver of his right to appeal a guilt or

24   innocence sentence or restitution.

25           However, the parties do agree pursuant to the

1   plea agreement that this waiver of appeal does not apply to

2   an appeal of the substantive reasonableness of a term of

3   imprisonment greater than 121 months, which is the high end

4   of the guideline range, and the reciprocal waiver of the

5   government as to a term of imprisonment below 97 months,

6   which is the low end of the guideline range.

7          In addition, the plea agreement waives the right

8   to any collateral attack under 28 U.S.C. 2255.  Chapter --

9   excuse me.  Paragraph 17 of the plea agreement is a Freedom

10  of Information Act waiver.  The defendant pursuant to this

11  plea agreement waives his right to obtain information

12  pursuant to the Freedom of Information Act.

13         Your Honor, and finally, paragraph 18 is a

14  complete agreement.  The defendant pursuant to that

15  paragraph acknowledges that he has read the plea agreement,

16  that he has reviewed it with his counsel and that he

17  understands the plea agreement and that this agreement,

18  along with any additional agreements signed by the parties

19  before the entrance of this plea, is the entire agreement

20  and understanding between the defendant and the United

21  States of America.

22         THE COURT:  Okay.  Thank you very much.

23         Mr. Critten, it's my understanding that you have

24  in fact executed this plea agreement; is that correct?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  And have you had opportunity to

2     review the plea agreement with your lawyer, Ms. Brisbois,

3     just literally paragraph by paragraph?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  You understand all the terms and

6     conditions of this plea agreement?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And have you voluntarily entered into

9     this plea agreement?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Now, you understand, Mr. Critten, if

12    you did not have the plea agreement and the matter went

13    through trial, et cetera, you could be facing an

14    imprisonment term of up to 30 years, to be followed by a

15    term of supervised release.

16         That supervised release means that you are

17    supervised under terms and conditions.  If you violate

18    those terms and conditions, you could be put back in prison

19    for the length of term of that supervised release.

20         You're facing a fine of $250,000 pursuant to the

21    statute, and because of the gross nature, another $50,000

22    for a total fine of $300,000.

23         The next one is a "will."  You will be assessed a

24    $100 special assessment, and can pay restitutions as agreed

25    to by the parties.  Do you understand all of that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, aside from this plea agreement

3     itself, have there been any other promises made as to what

4     the Court would do at sentencing?  In other words, are

5     there any side deals?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  You understand that I need not accept

8     this plea unless I'm satisfied of two things.  One, that

9     you fully understand your constitutional rights; and two,

10    that you're actually guilty of the offense charged.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you further understand that -- and

14    let's go over these constitutional rights first.  First of

15    all, do you understand that you have a right to be

16    represented by a lawyer at every stage of the proceeding?

17    If you cannot afford a lawyer, a lawyer will be appointed

18    on your behalf.

19         Do you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you further understand you have a

22    right to plead not guilty, to persist in that plea of not

23    guilty and have your case go forward to trial?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you also understand that you have

1    a right to a speedy trial?  It's a trial within 70 days of

2    the date of your indictment.  Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you further understand that you

5    have a right to a trial by a jury of twelve persons.  They

6    must unanimously agree that you're guilty before you can be

7    convicted.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Do you further understand that you

10   have the right to assistance of counsel at trial?

11   Ms. Brisbois could be with you at all times during a trial.

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you also understand that at that

14   trial, you would have a right to cross-examine and confront

15   any witnesses called against you?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Do you further understand that you

18   are in fact presumed innocent until actually proven guilty?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Do you also understand the government

21   must prove its case against you beyond a reasonable doubt?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Do you further understand that at a

24   trial you would have a right to take the witness stand,

25   testify and tell your side of the story?

 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  Do you also understand that you

 3     cannot be compelled to incriminate yourself?  You have an

 4     absolute right to remain silent, and after you talked it

 5     over with Ms. Brisbois, if you decided not to testify, that

 6     Mr. Jacobs or whoever is prosecuting the case would be

 7     prohibited from commenting to the jury about your failure

 8     to testify.

 9              Do you understand all of that?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Do you further understand you have a

12     right to compulsory process or subpoena power to bring any

13     witnesses in on your own behalf?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Now, you understand, Mr. Critten,

16     that if this plea is accepted, there will not be a trial of

17     any kind.  Do you understand that?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Do you further understand that

20     pursuant to this plea agreement, there is severe

21     limitations on your right to appeal any aspect of this.  Do

22     you understand that?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Now, there is one possibility I think

25     of appeal, and that is if I were to sentence above the

1    guidelines without a reason or if I were to make a mistake

2    in the guidelines or something of that nature, you would

3    have the right to appeal, but it's an extremely limited

4    right.

5              Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, in addition to that, you

8    understand that if you were to take such an appeal, you

9    have to do so within 14 days of the date of your

10   sentencing.  Do you understand that, or give notice of that

11   within 14 days of the date of your sentencing.

12             Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Now, we've gone over a whole series

15   of rights.  Do you have any questions about any of them?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Do you understand these rights?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And you voluntarily waive these

20   rights?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Now, again, has there been any force

23   or threats or promises made apart from the plea agreement

24   itself?

25             THE DEFENDANT:  No, sir.

 1          THE COURT:  Have you had any drugs or alcohol in

 2     the last 24 hours?

 3          THE DEFENDANT:  No, sir.

 4          THE COURT:  Have you had sufficient time to

 5     confer with your lawyer, Ms. Brisbois?

 6          THE DEFENDANT:  Yes, sir.

 7          THE COURT:  And has she done a good job on your

 8     behalf?  Are you satisfied with her representation?

 9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, there is one other factor that I

11     should mention, I think, Mr. Critten, for you to understand

12     that this case is assigned to Chief Judge Tunheim, and I'm

13     just kind of filling in for him and taking some pleas,

14     et cetera.

15          There have been no arrangements made as to who

16     the sentencing judge would be.  The case remains assigned

17     to Judge Tunheim, so it may be that I would pass sentence

18     on your case.  It may be that Judge Tunheim would pass on

19     the sentence on your case.

20          In either event, both of us have Article III

21     status and are entitled to do that, to pass that sentence.

22     Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, I think we're now at the point

25     that we can look to the mail fraud count.  How do you

1    plead, guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Okay.  And, Mr. Jacobs, would you be

4    kind enough to inquire as to the facts of the case, please?

5              MR. JACOBS:  Certainly, Your Honor.  Thank you.

6              Good morning, Mr. Critten.

7              THE DEFENDANT:  Good morning.

8              MR. JACOBS:  If at any point you can't hear me or

9    you need me to repeat a question, please let me know, and

10   I'm happy to do so.  Mr. Critten, from in or about at least

11   August of 2013 through in or about February of 2020, were

12   you employed at a company called Leisure Time Resources?

13             THE DEFENDANT:  Yes, sir.

14             MR. JACOBS:  If I refer to that company as LTR,

15   will you understand what I'm talking about?

16             THE DEFENDANT:  Yes, sir.

17             MR. JACOBS:  In the state and District of

18   Minnesota during that time period, did you knowingly

19   conspire with others to devise a scheme and artifice to

20   defraud and to obtain money by materially false and

21   fraudulent pretenses?

22             THE DEFENDANT:  Yes, sir.

23             MR. JACOBS:  Was that scheme to defraud in

24   connection with telemarketing?

25             THE DEFENDANT:  Yes, sir.

1          MR. JACOBS:  Did that scheme to defraud victimize

2     10 or more people over the age of 55?

3          THE DEFENDANT:  Yes, sir.

4          MR. JACOBS:  For the purpose of executing that

5     scheme, was there cause to be the sending, delivery or

6     receipt of mail through the United States Postal Service?

7          THE DEFENDANT:  Yes, sir.

8          MR. JACOBS:  Now I'll talk a little bit more

9     specifically about the fraud here.  Did you participate in

10    the telemarketing fraud scheme involving magazine

11    subscription sales?

12         THE DEFENDANT:  Yes, sir.

13         MR. JACOBS:  Did you work as a telemarketing for

14    LTR?

15         THE DEFENDANT:  Yes, sir.

16         MR. JACOBS:  Is LTR a Florida based company

17    involved in fraudulent magazine sales?

18         THE DEFENDANT:  Yes, sir.

19         MR. JACOBS:  Is LTR owned and operated by

20    codefendants Anthony Moulder and John Blalock?

21         THE DEFENDANT:  Yes, sir.

22         MR. JACOBS:  Did LTR operate and did you work at

23    a telemarketing call center in Cape Coral, Florida?

24         THE DEFENDANT:  Yes, sir.

25         MR. JACOBS:  In committing this scheme to

1    defraud, would you and others at the company use fraudulent

2    sales scripts to defraud victims?

3              THE DEFENDANT:  Yes, sir.

4              MR. JACOBS:  Were many of those victims elderly

5    or otherwise vulnerable?

6              THE DEFENDANT:  Yes, sir.

7              MR. JACOBS:  Were the fraudulent sales scripts

8    designed to induce victims to make large or repeat payments

9    to LTR and other companies?

10             THE DEFENDANT:  Yes, sir.

11             MR. JACOBS:  Would the company obtain lists of

12   consumers who had active magazine subscriptions through

13   other companies?

14             THE DEFENDANT:  Yes, sir.

15             MR. JACOBS:  Were these referred to sometimes as

16   lead lists?

17             THE DEFENDANT:  Yes, sir.

18             MR. JACOBS:  Would you and other telemarketers at

19   that company then call individuals on those lead lists?

20             THE DEFENDANT:  Yes, sir.

21             MR. JACOBS:  And would you use the fraudulent

22   sales scripts that we had just discussed?

23             THE DEFENDANT:  Yes, sir.

24             MR. JACOBS:  And would you make a series of

25   knowing lies and misrepresentations to sign them up for a

1    new magazine subscription?

2              THE DEFENDANT:  Yes, sir.

3              MR. JACOBS:  Would you and others at the company

4    claim that you were calling from the victim consumer's

5    existing magazine company?

6              THE DEFENDANT:  Yes, sir.

7              MR. JACOBS:  But was that true?

8              THE DEFENDANT:  No, sir.

9              MR. JACOBS:  Would you and other telemarketers at

10   the company claim that the victim's account was set to

11   renew for a 60-month term at midnight?

12             THE DEFENDANT:  Yes, sir.

13             MR. JACOBS:  Was that true?

14             THE DEFENDANT:  No, sir.

15             MR. JACOBS:  Would you and other telemarketers

16   offer to take this so-called automatic renewal off the

17   account?

18             THE DEFENDANT:  Yes, sir.

19             MR. JACOBS:  Would you claim or offer to reduce

20   the victim consumer's monthly magazine payment?

21             THE DEFENDANT:  Yes, sir.

22             MR. JACOBS:  But in reality, did LTR have any

23   existing relationship typically with these victim

24   consumers?

25             THE DEFENDANT:  No, sir.

1              MR. JACOBS:  Instead did you or other

2     telemarketers call to trick them into unwittingly signing

3     up for a new magazine subscription?

4              THE DEFENDANT:  Yes, sir.

5              MR. JACOBS:  In the course of this ongoing

6     scheme, did telemarketers from LTR and the owners of LTR

7     defraud thousands of victims?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Were at least 10 of those victims

10    over the age of 55?

11             THE DEFENDANT:  Yes, sir.

12             MR. JACOBS:  In between August 2013 and February

13    2020, did LTR collect approximately $9,465,000 from victims

14    as a result of this fraudulent scheme?

15             THE DEFENDANT:  Yes, sir.

16             MR. JACOBS:  Mr. Critten, are you pleading guilty

17    today knowingly and voluntarily?

18             THE DEFENDANT:  Yes, sir.

19             MR. JACOBS:  Are you pleading guilty today

20    because you are in fact guilty of the charges in the

21    indictment?

22             THE DEFENDANT:  Yes, sir.

23             MR. JACOBS:  Thank you, Mr. Critten.

24             Your Honor, I have nothing further on the factual

25    basis.

1          THE COURT:  Okay.  Excuse me.  Okay.  Thank you

2     very much.

3          Mr. Critten, based upon the testimony presented

4     in the matter, the Court does find that you are actually

5     guilty of the offense charged in this matter.  I do at this

6     time order a presentence investigation report, ask that the

7     probation service prepare that report, submit it to the

8     Court.

9          I have to tell you, Mr. Critten, because of the

10     large number of defendants that, codefendants in this

11     matter, it may be some time until sentencing in fact will

12     be executed.

13          I just can't give you any assurances about that

14     one way or another because quite honestly, I have not

15     talked to the probation department about how they wish to

16     proceed in it, and I have not talked to Judge Tunheim about

17     how he wishes to proceed.

18          So I'm just going to leave any sentencing date

19     open, and subject to your being advised, suggest that you

20     remain on bond according to current terms and conditions

21     pending sentencing in the matter, but I do have to let you

22     know that once sentencing has been determined, it's

23     extremely important that you appear at that sentencing.

24          Failure to appear can result in another very

25     serious crime and in addition to the matter before us, and

1    therefore you need to be sure that you do appear.

2              Are there any other matters to come to our

3    attention at this time?

4              MR. JACOBS:  None from the government, Your

5    Honor.

6              MS. BRISBOIS:  No, Your Honor.

7              THE COURT:  Ms. Brisbois?

8              MS. BRISBOIS:  No, Your Honor.

9              THE COURT:  Okay.  We thank you very much.  We

10   will in any event stand in recess at this time.

11             Ms. Brisbois, I think this is the first time I

12   have had the privilege of having you in the court.  You

13   happen to share a surname with a very fine jurist in

14   Duluth.

15             Is there any relationship?

16             MS. BRISBOIS:  There is not.

17             THE COURT:  It would be worthwhile.

18             MS. BRISBOIS:  Yeah.

19             THE COURT:  Very good.  Thank you very much.  I

20   just honestly did not know.

21             Say hi to Mr. Tamburnino.

22             MS. BRISBOIS:  I will.

23             THE COURT:  And thank all of you for being with

24   us today.

25             MS. BRISBOIS:  Thank you, Your Honor.

1          THE COURT:  We are in recess.

2          MR. JACOBS:  Thank you, Your Honor.

3          MS. BRISBOIS:  Thank you, Your Honor.

4                    **(Court was adjourned.)**

5                    *          *          *

6          I, Kristine Mousseau, certify that the foregoing

7     is a correct transcript from the record of proceedings in

8     the above-entitled matter.

9

10

11

12     Certified by:  s/  Kristine Mousseau, CRR-RPR
                          Kristine Mousseau, CRR-RPR
13

14

15

16

17

18

19

20

21

22

23

24

25